Filed 1/22/16  In re S.H. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re S.H., a Person Coming Under the Juvenile Court Law. | |
| MENDOCINO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>A.E.,<br><br>        Defendant and Appellant. | A145127<br><br>(Mendocino County<br>Super. Ct. No. SCUK-JVSQ-14-17009-01) |

A.E. (Mother) appeals the juvenile court's order for permanent placement of her son S.H. in a tribal customary adoption (TCA).[1]  On appeal, she maintains the juvenile court erred in denying her Welfare and Institutions Code section 388[2] modification

---

[1] TCA has been an alternative placement plan for Indian children in California since July 2010.  (Stats. 2009, ch. 287, § 12, P. 3453; see *In re H.R.* (2012) 208 Cal.App.4th 751, 759 (*H.R.*).)  A TCA is an "adoption by and through the tribal custom, traditions, or law of an Indian child's tribe." (§ 366.24, subd. (a)(1).)  TCA "is an alternative to a standard adoption and protects both the Tribe's and the child's interests in maintaining tribal membership by formalizing an adoption by an individual selected by the Tribe without terminating parental rights." (*In re A.M.* (2013) 215 Cal.App.4th 339, 348.)  The Legislature provided for TCAs in part because " 'termination of parental rights can disrupt the child's ability to be a full member of the tribe or participate fully in tribal life.' " (*H.R.,* at p. 761.)

[2] All further statutory references are to the Welfare and Institutions Code.

petition because she voluntarily completed her case plan and had an established bond with her infant son, S.H.  She also contends sufficient evidence does not support the court's finding that her continued custody posed a serious risk of damage to the child.  We affirm.

<strong>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</strong>

**A.     *Detention***

In May 2014, the Mendocino County Health and Human Services Agency (Agency) detained the newborn S.H. from A.E. (Mother) and P.H. (Father) after Mother and S.H. tested positive for opiates at birth.

On May 28, 2014, the Agency filed a dependency petition on behalf of S.H. pursuant to section 300, subdivisions (b), (g), and (j), alleging the parents both had unresolved substance abuse issues, had criminal and prior child welfare histories that included domestic violence, and were currently incarcerated, all of which posed a risk of harm to the child.  Mother also allegedly had long-standing and current mental health issues.  The parents previously failed to reunify with S.H.'s older sister, who had been removed due to substance abuse and domestic violence.

The Agency filed a detention report on May 29, 2014.  The report disclosed that beginning in February 2012, Mother had sustained arrests and convictions for possession of controlled substances.  She tested positive for methamphetamines as late as February 2014.  The Agency noted S.H.'s sister had been removed from the parents' care in September 2011.  In addition to Mother's substance abuse problems and mental health issues, at that time the parents' violent relationship was deemed to have placed their daughter at risk.  After reunification services were terminated, the juvenile court ordered the girl to be placed in a tribal customary adoption through the Round Valley Tribe.

The detention hearing in the present case was held over two days, concluding on June 3, 2014.  Mother claimed the positive tests for opiates were due to medication she had been prescribed that included codeine and hydrocodone.  She said she took these pills for three or four days before S.H. was born to address an infection she acquired after having a tooth pulled.  She stated she was no longer taking the medication.

While acknowledging Mother appeared to have been doing "substantially better" over the past few months, the juvenile court noted she had "a well-documented multi-year history of significant substance abuse," including having been arrested for possession of a controlled substance as recently as February 2014. Additionally, the prior dependency proceeding revealed Mother had other parenting deficits. S.H. was ordered detained and the matter was set for jurisdiction.

## B.    Jurisdiction

On July 7, 2014, the Agency submitted its jurisdiction hearing report. The report indicated S.H. had been placed in the same licensed foster care home as his older sister. The Agency reported that Mother was convicted of misdemeanor domestic violence in December 2013 and received a sentence of 30 days in jail.[3] She reenrolled in a substance abuse treatment program on June 5, 2014, and appeared to be highly motivated to do well in the hopes of having her son returned to her. The Agency included a copy of the jurisdiction report from the prior dependency proceeding, which showed that both parents had been arrested in August 2011 for misdemeanor spousal battery following an incident of domestic violence in their trailer.

At the hearing, the juvenile court found true that Mother's long-standing substance abuse problems and ongoing mental health issues rendered her unable to provide S.H. with a home free from the negative effects of drugs. Additionally, the parents' history and ongoing problems with domestic violence placed the child at risk of abuse and neglect. The court concluded S.H. came within section 300, subdivisions (b) and (j).

## C.    Disposition

The Agency filed a dispositional report on August 19, 2014. Mother was still involved in her substance abuse treatment, and had kept close to 100 percent of her appointments. She was also receiving domestic violence counseling and psychotherapy. She was cooperative with drug testing and her participation was "very satisfactory." Her drug tests were clean for nonprescription drugs, except for the most recent test, which

---

[3] The underlying incident here reportedly involved Father's brother.

3

was positive for marijuana. She was aware that she needed to stay away from Father to help stem the domestic violence.

The Agency recommended the parents be bypassed for reunification services because they already had been provided services in connection with the prior dependency and had failed to reunify with their daughter. Mother also had failed to complete court-ordered substance abuse rehabilitation programs on three prior occasions within the past three years.

Father and Mother testified at the hearing, as did the Agency's social worker, Jennifer Sookne. Mother stated that she was residing in an in-law unit on her parents' property. She was not romantically involved with Father and was tending to avoid him because he was abusive and she knew resuming the relationship could hurt her chances of having her son returned to her. However, she did recently give him a ride home from the substance abuse treatment center. She denied smoking marijuana.

Sookne testified that in spite of Mother's recent progress, the Agency was recommending bypass because Mother had a demonstrated history of cleaning up for a short period of time and then relapsing. Mother did not appear to be able to maintain sobriety or to stay away from Father.

The parties stipulated to the declaration of Lorraine Laiwa as an Indian expert witness in lieu of testimony. Laiwa opined continued placement of S.H. at the home of the parents was likely to result in serious emotional and/or physical injury to the child. Mother needed to establish a record of being clean and sober, and of staying away from relationships involving domestic violence for an extended period of time before the child could safely be returned to her.

The juvenile court found Mother had made reasonable efforts to treat the problems that previously led to the removal of S.H.'s sibling, including separating from Father and engaging in substance abuse treatment. However, the court decided to bypass Mother for

4

services under section 361.5, subd. (b)(13),[4] based on her extensive substance abuse history and her resistance to prior court-ordered treatment during the three-year period before the present dependency petition was filed. The matter was set for a permanent plan hearing.[5]

### D. *The Combined Permanency Planning and Section 388 Hearing*

The Agency filed its section 366.26 report on December 18, 2014. Mother was currently visiting S.H. two times per month for one hour. He was still living with his older sister in her tribal customary adoptive home. S.H. was doing well in this home, where he had resided since birth. He had a loving relationship with his foster parents and his sister. An attached adoption assessment prepared by the California Department of Social Services reported that S.H. was a calm and happy child who was easily comforted, except after visits with Mother. The foster parents were committed to S.H. and desired to adopt him.

On March 11, 2015, Mother filed a request to change a court order pursuant to section 388, asking the juvenile court to order reunification services or family maintenance services. In her attached declaration, Mother asserted she had continued to make significant changes to her life since the last hearing, including maintaining her separation from Father, obtaining a restraining order against him, and filing documents to dissolve their marriage. She completed her drug treatment program on an accelerated schedule and continued to meet with her program counselor. She also completed a 12-week parenting class and had reenrolled in college courses. She consistently attended her

---

[4] Section 361.5, subdivision (b)(13) provides, in part: "Reunification services need not be provided to a parent . . . when the court finds, by clear and convincing evidence . . . [¶] . . . [¶] [t]hat the parent . . . has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition that brought that child to the court's attention . . . ."

[5] Mother and Father filed separate petitions for an extraordinary writ, both of which were dismissed on December 2, 2014.

scheduled visitation with S.H. and believed it was in his best interest to be returned to her under a plan of family maintenance.

At the March 19, 2015 hearing, Mother's counsel stated that Mother had obtained a restraining order against father on September 18, 2014. S.H.'s counsel then moved to admit a page from an Agency visitation log regarding a visit between Mother and S.H. that occurred on February 17, 2015. The document included an assistant social worker's report that Mother had said she and Father exchanged text messages in which Mother asked him to bring her drugs, hoping he would be caught and arrested. Mother's counsel responded: "Your Honor, there is an objection to receipt of that. It is hearsay. However, I think if it would be accepted if called on the stand my client would deny making those statements, then it can be entered in." The court received the document.

In denying Mother's section 388 motion, the juvenile court agreed she had shown a change of circumstances with respect to her substance abuse problem. Specifically, her completion of a drug treatment program and her demonstrated sobriety for a period of at least six months, and possibly as much as a year, constituted a changed circumstance. However, the parents' long-standing domestic violence relationship continued to be problematic. The court found Mother had not consistently enforced her restraining order and thus had not shown she could protect a young child placed in her care. The Agency's records reflected she continued to have contact with Father "of a quite unpleasant nature," and that she had taken few if any steps to stop him from coming around her classes or being near her residence.

Even if she had demonstrated sufficient changed circumstances, the juvenile court found it was not in S.H.'s best interest to reunify with Mother. At the time of the hearing, he was in a tribally supported placement with his sister, and his prospective adoptive parents were meeting all of his needs. Due to his young age, the court concluded delaying permanency for him would not be in his best interests. The case then proceeded to the section 366.26 hearing.

Psychologist Dr. Jacqueline Singer testified pursuant to section 224.6, subdivision (c), as a qualified expert witness for purposes of Indian child custody

6

proceedings. She opined that continued custody by the parents would likely result in serious physical or emotional damage to their son. Additionally, the Agency, the tribe, the child's attorney, and Father all supported tribal customary adoption as the permanent plan. The juvenile court found by clear and convincing evidence that S.H. will be adopted by his current caregivers. Based on the totality of the evidence, including Singer's opinion, the court also found beyond a reasonable doubt that continued custody by the parents would likely result in serious emotional or physical damage to S.H. The court also concluded Singer's opinion was supported by substantial evidence, and adopted her recommendation for tribal customary adoption.

Mother filed her appeal on May 11, 2015.[6]

## DISCUSSION

### I.    Denial of Mother's Section 388 Petition

Mother claims the juvenile court abused its discretion in denying her section 388 modification petition. "A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806; § 388, subds. (a)(1), (c)(1)(A).) A parent who files a petition at the time of the section 366.26 hearing when he or she has no reunification services has a particularly weighty burden because at that point "a parent's interest in the care, custody and companionship of the child is no longer paramount" and "the focus shifts to the needs of the child for permanency and stability." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 464.)

In *In re J.C.* (2014) 226 Cal.App.4th 503, the appellate court concluded the appropriate standard of review to apply after reunification services have been terminated is whether a parent petitioning for an order reopening reunification efforts has established that such a change *will advance* the child's need for permanency and stability. (*Id.* at p. 527.) The juvenile court is afforded "sound discretion" in deciding a section 388

---

[6] Father has not filed an appeal.

petition, and "its decision will not be disturbed on appeal in the absence of a clear abuse of discretion." (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415.)

Mother first asserts the juvenile court abused its discretion in admitting the hearsay statements of the assistant social worker contained in the Agency's visitation log, and in relying on those statements to find that her circumstances had not sufficiently changed with respect to domestic violence. She claims the statements constituted inadmissible hearsay.[7]

Mother has forfeited her argument on appeal. (See *In re Dakota H.* (2005) 132 Cal.App.4th 212, 221–222.) At the hearing on her petition, her attorney did make a hearsay objection, but then stated: "However, I think if it would be accepted if called on the stand my client would deny making those statements, *then it can be entered in.*" (Italics added.) The juvenile court accepted the offer of proof and, apparently relying on counsel's concession as to admissibility, admitted the document and made findings based on its content. Mother cannot lull the court into error by stipulating to the admission of arguably inadmissible evidence and then stand silently by until the conclusion of the proceedings to pursue an objection that she clearly had the opportunity to make at trial. (*In re Dakota H.*, at p. 222.)

Even if the juvenile court erred in relying on statements in the visitation log, we would still conclude the court did not abuse its discretion in finding she failed to satisfy the second prong under section 388 pertaining to the best interests of the child. Although Mother had made notable progress in her substance abuse treatment, the court reasonably concluded she had not shown granting the petition was in her son's best interests. At the time of the hearing, S.H. was 10 months old. He had never been in his parents' care. Instead, since birth he had resided in his prospective adoptive home, which was a culturally appropriate home that included two dedicated foster parents as well as his full biological sister. The foster parents had been approved as adoptive parents for him, and

_____

[7] We note relevant hearsay evidence is admissible at the disposition hearing. It is also admissible at the jurisdiction hearing. (*In re Tasman B.* (1989) 210 Cal.App.3d 927, 933.)

S.H. was doing well in their home. The court reasonably found granting Mother's petition would have subjected S.H. to further uncertainty and instability. Under these circumstances, the court was within its discretion to conclude that moving toward permanency was in S.H.'s best interests.

## II. *Finding of Risk of Serious Damage*

Mother claims the evidence is insufficient to support the juvenile court's finding that continued parental custody would present a substantial risk of serious physical and emotional damage to S.H. In challenging the juvenile court's finding, Mother relies on the laws that apply to termination of parental rights in cases that fall under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.). However, in the present case S.H. was placed in a TCA and Mother's parental rights were not terminated. Thus, her claim of error is ineffectual.

At a section 366.26 hearing, the juvenile court determines a permanent plan of care for a dependent child. (§ 366.26, subd. (b); *In re Casey D.* (1999) 70 Cal.App.4th 38, 50.) The general statutory preference is to terminate parental rights and place the child for adoption. (§ 366.26, subd. (b)(1); *In re Celine R.* (2003) 31 Cal.4th 45, 53.) However, the Legislature established TCA as an alternative permanent plan for Indian children. Tribal customary adoption is an "adoption by and through the tribal custom, traditions, or law of an Indian child's tribe. Termination of parental rights is not required to effect the tribal customary adoption." (§ 366.24, subd. (a)(1).)

Section 366.26, subdivision (c)(2)(B)(ii) provides, in part, that a juvenile court "*shall not terminate* parental rights if [¶] . . . [¶] [i]n the case of an Indian child: [¶] . . . [¶] [t]he court *does not make a determination* at the hearing terminating parental rights, supported by evidence beyond a reasonable doubt, including testimony of one or more 'qualified expert witnesses' . . . that the continued custody of the child by the parent *is likely to result in serious emotional or physical damage* to the child." (Italics added.) While it appears the juvenile court did make this determination, it did not terminate Mother's parental rights.

9

In dependency proceedings, orders, not juvenile court findings, are appealable. (See § 395, subd. (a)(1) ["A judgment in a proceeding under Section 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as an order after judgment."].) Here, the order at issue in Mother's appeal is the juvenile court's order setting the permanent plan as a TCA. Thus, we can only review findings that formed the basis of that order. She does not raise any other challenges to the court's choice of permanent plan.

Even though the court did make a determination as to "serious emotional or physical damage" at the section 366.26 hearing, any error in that ruling would be prejudicial only if Mother's parental rights had actually been terminated.[8] Since the juvenile court did not issue an order terminating parental rights, we decline to review the challenged finding. (Cf. *In re S.B.* (2009) 46 Cal.4th 529, 534 ["review of findings is normally obtained by appeal from the ensuing judgment or order"].)

## DISPOSITION

The orders are affirmed.

---

[8] In cases involving Indian children, termination of parental rights is not indicated where "[t]he child's tribe has identified guardianship, foster care with a fit and willing relative, tribal customary adoption, or another planned permanent living arrangement for the child." (§ 366.26, subd. (c)(1)(B)(vi)(II).) "Tribal customary adoption is intended to provide an Indian child with the same stability and permanency as traditional adoption under state law without the termination of parental rights, which is contrary to the cultural beliefs of many Native American tribes." (*H.R., supra,* 208 Cal.App.4th at p. 755.)

_____
DONDERO, J.

We concur:


_____
MARGULIES, Acting P.J.


_____
BANKE, J.

11